UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA BARRON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:16-cv-00097-AGF |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Cynthia Barron was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, the decision of the Commissioner will be affirmed.

**BACKGROUND**

Plaintiff, who was born on March 31, 1964, protectively filed her application for benefits on June 11, 2013, alleging disability beginning May 25, 2012, due to depression, degenerative disc disease in her back, arthritis, and memory loss. On October 3, 2013, Plaintiff's application was denied at the initial administrative level, and on November 19, 2013, she requested a hearing before an Administrative Law Judge ("ALJ"). A hearing

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit.

was held on October 23, 2014, at which Plaintiff testified, but the ALJ who conducted the hearing became unavailable prior to issuing a decision. Therefore, a new ALJ reviewed the entire evidence of record, including the hearing transcript, and also held a supplemental hearing on February 19, 2015, at which Plaintiff and a vocational expert ("VE") testified.

By decision dated March 6, 2015, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2012; that Plaintiff did not engage in substantial gainful activity during the period of her alleged onset date of May 25, 2012, through her date last insured of December 31, 2012; that, during this time, Plaintiff had the severe impairments of mild lumbar degenerative disc disease, a depressive disorder, and an anxiety disorder; but that no impairment or combination of impairments met or medically equaled the severity of one of the deemed-disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform her past relevant work as a cashier, as well as certain unskilled light jobs listed in the Dictionary of Occupational Titles ("DOT") (fast-food worker and housekeeper) that the VE had stated a person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act.

Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on April 19, 2016. Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action now

under review.

Plaintiff argues that the ALJ's decision was not supported by substantial evidence in the record. More specifically, Plaintiff argues that, even though the ALJ gave "significant weight" to the opinion of state consulting physician, Barry Burchett, M.D., the ALJ did not properly incorporate all aspects of Dr. Burchett's opinion into Plaintiff's RFC. Plaintiff also argues that the ALJ erred by failing to properly identify and resolve conflicts between the occupational evidence provided by the VE and the information in the DOT and its companion volume, the Selected Characteristics of Occupations ("SCO"). Plaintiff asks that the ALJ's decision be reversed and that she be awarded benefits, or alternatively, that the case be remanded for further development of the record.

**Agency Records, Medical Records, Evidentiary Hearing, and ALJ's Decision**

The Court adopts the unopposed facts set forth in Plaintiff's Statement of Uncontroverted Material Facts (ECF No. 13-1), as amended by Defendant (ECF No. 18-1), and in Defendant's Statement of Additional Material Facts (ECF No. 18-2), as amended by Plaintiff (ECF No. 19-1). Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

**DISCUSSION**

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by

substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse . . . merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citation omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a severe impairment or combination of impairments.

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step-five burden. *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**The ALJ's RFC Determination**

The ALJ found that Plaintiff had the RFC to perform light work as defined in the Commissioner's regulations, except that she was limited to no kneeling, crouching, or crawling; occasional stooping; frequent climbing of stairs and ramps; frequent operation of foot controls bilaterally; and only work involving simple, routine tasks and simple work-related decisions. Tr. 15.

In determining Plaintiff's RFC, the ALJ considered, as relevant here, the opinion that Dr. Burchett prepared after his November 13, 2014 consultative examination of

5

Plaintiff. Plaintiff reported to Dr. Burchett that her back pain was exacerbated by bending or heavy lifting. Dr. Burchett indicated that Plaintiff was able to walk 50 feet unassisted with a normal gait; that she stopped squatting at 85 degrees of knee flexion due to her complaints of lower back pain; and that she had full range of motion of the spine, with no motor or sensory abnormalities in the lower extremities and no spasm or tenderness in the back. Tr. 685-88.

In his medical source statement dated November 13, 2014, Dr. Burchett also indicated, in check-box format, that Plaintiff was limited to lifting and carrying 20 pounds frequently; walking, standing, and sitting two hours at one time for a total of eight hours in an eight-hour workday; no kneeling, crouching, or crawling; occasional stooping and climbing of ladders or scaffolds; frequent climbing of stairs and ramps; frequent operation of foot controls bilaterally; occasional pushing and pulling; and occasional reaching overhead but continuous reaching otherwise. Tr. 691-96.

The ALJ stated that he afforded "significant weight" to the opinions of Dr. Burchett, and that "Dr. Burchett's opinion that [Plaintiff] is capable of performing light work activity with some additional limitations is consistent with the overall objective medical evidence of record." Tr. 18. The ALJ noted that "[o]f particular importance" was that "Dr. Burchett did not examine [Plaintiff] and offer his opinions until two years after the date last insured, and [Plaintiff] testified that her conditions had been getting progressively worse." *Id.* The ALJ found that "[e]ven with this passage of time and deterioration of [Plaintiff's] physical condition, Dr. Burchett found that [Plaintiff] was still capable of the type of light

physical work activity described in the [RFC]," which the ALJ found "add[ed] significant evidentiary support for the limitations included in the [RFC]." Tr. 19.

The ALJ incorporated many but not all of Dr. Burchett's findings into the RFC. In particular, as Plaintiff highlights, the ALJ did not incorporate Dr. Burchett's check-box finding that Plaintiff was limited to only occasional overhead reaching. Plaintiff argues that, as a result, the ALJ committed reversible error. Plaintiff argues that the alleged error was not harmless because including an overhead reaching limitation in Plaintiff's RFC might have caused the VE to exclude the cited jobs of cashier, fast food worker, and housekeeper, as jobs a person with Plaintiff's RFC and vocational factors could perform. The Court disagrees.

"The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted). However, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Id.* at 927 (citation omitted). Rather, the ALJ must base the RFC "on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

Here, the ALJ properly formulated Plaintiff's RFC after considering all of the relevant evidence, including the medical evidence. The ALJ discussed at length the

opinions of Dr. Burchett and other treating and examining physicians, and gave "significant weight" to Dr. Burchett's opinion to the extent it was consistent with the record. But the ALJ was not required to include in his RFC determination every limitation set out by Dr. Burchett. Rather, the ALJ was free to disregard limitations that were inconsistent with the record. *See, e.g., Eberhart v. Colvin*, No. 4:13CV940 CDP, 2014 WL 3956480, at \*11 (E.D. Mo. Aug. 13, 2014) (holding that it was not error for the ALJ to exclude absenteeism as a limitation in the plaintiff's RFC where such limitation was inconsistent with the record, notwithstanding that it was included in a treating physician's opinion that the ALJ afforded "great weight").

Other than Dr. Burchett's check-box finding, there is no suggestion in the record that Plaintiff had problems with reaching. The medical records during the relevant period show that Plaintiff had normal gait; normal range of motion; normal muscle tone, bulk, and strength; and no sensory or reflex abnormalities. Tr. 639, 686-88. Plaintiff reported to Dr. Burchett that her back pain was exacerbated by heavy lifting and bending, but not reaching. Tr. 685. Likewise, in her application for benefits and at both hearings, Plaintiff stated that she had problems with bending, heavy lifting, and kneeling, but never with reaching. Tr. 91-123, 124-65, 330. Finally, as the ALJ noted, the ALJ was required to evaluate Plaintiff's conditions on or before the date last insured, December 31, 2012, which was nearly two years before she was examined by Dr. Burchett and at a time when Plaintiff's impairments were, according to her own testimony, not as severe.

In short, the Court finds that the ALJ properly made the RFC determination based on medical evidence and the record as a whole, and substantial evidence supports the ALJ's decision.

**Alleged Conflict Between the VE's Testimony and the DOT**

Plaintiff also argues that the ALJ erred by failing to identify or resolve conflicts between the VE's testimony that a person with Plaintiff's RFC and vocational factors could perform the jobs of cashier, fast food worker, and housekeeper; and the information contained in the DOT/SCO regarding these jobs. Plaintiff points to the following alleged conflicts: (1) the RFC limited Plaintiff to simple, routine work, whereas the DOT descriptions for fast food worker (DOT 311.472-010, 1991 WL 672682) and cashier (DOT 211.462-010, 1991 WL 671840) require reasoning Levels of 2 and 3,[2] respectively; and (2) the RFC limited Plaintiff to no kneeling or crouching, whereas the DOT description for housekeeper (DOT 323.687-014, 1991 WL 672783) requires occasional kneeling and crouching.

The "DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Page v. Astrue*, 484 F.3d 1040, 1045 (8th Cir. 2007) (citation omitted). As Plaintiff argues, an ALJ has a duty to make sufficient inquiry to determine whether a conflict exists between a VE's testimony

---

[2] Level 2 reasoning involves applying "commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT 311.472-010, 1991 WL 672682. Level 3 reasoning involves applying "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form." DOT 211.462-010, 1991 WL 671840.

and the information provided in the DOT, and if there is an "apparent unresolved conflict," to "elicit a reasonable explanation for the conflict and resolve the conflict by determining if the explanation given by the [VE] provides a basis for relying on the VE testimony rather than on the DOT information." *Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014) (citations omitted). However, an ALJ's failure to ask a VE about possible conflicts is harmless where no such conflict appears to exist. *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007).

Plaintiff correctly notes that the ALJ here did not ask the VE about conflicts with the DOT. However, the Eighth Circuit has held that there is no direct conflict between "carrying out simple job instructions" and performing "simple, routine, and repetitive work activity," and the DOT's Level 2 reasoning definition. *See Moore v. Astrue*, 623 F.3d 599, 604–05 (8th Cir. 2010). Likewise, the Eighth Circuit has repeatedly held that any potential inconsistency between the DOT's Level 3 reasoning and the ability to follow only simple instructions and perform simple, routine work is not a conflict that an ALJ must resolve. *See Renfrow,* 496 F.3d at 921; *Hillier v. Soc. Sec. Admin.,* 486 F.3d 359, 367 (8th Cir. 2007); *see also Welsh v. Colvin,* 765 F.3d 926, 930 (8th Cir. 2014); *Chismarich v. Berryhill*, No. 4:15CV1575 CDP, 2017 WL 476408, at *5 (E.D. Mo. Feb. 6, 2017). Thus, the failure of the ALJ to inquire into such conflicts was harmless.

There is a direct conflict between "no" kneeling or crouching, as stated in the RFC, and "occasional" kneeling and crouching, as stated in the DOT listing for housekeeper. However, the ALJ's failure to inquire into this conflict was also harmless, in light of the

ALJ's substantially supported finding that Plaintiff could perform her past relevant work as a cashier, as well as the job of fast-food worker, which exists in significant numbers in the national economy, neither of which require kneeling or crouching. *See Bonnell v. Astrue*, 650 F. Supp. 2d 948, 961 (D. Neb. 2009) (finding that any error in the ALJ's acceptance of a VE's testimony concerning the jobs of dishwasher and janitor, due to a conflict with the DOT, was harmless in light of the VE's testimony as to other jobs existing in significant numbers in the national economy that could be performed by a person with the plaintiff's limitations).

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 9th day of August, 2017